**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **JASON J. WILLIAMS,** | * | |
| **Plaintiff,** | * | |
| **v.** | | **Case No.: GJH-21-2856** |
| | * | |
| **THE HONORABLE CARLOS DEL TORO,** *et al.*, | * | |
| | * | |
| **Defendants.** | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Jason J. Williams filed a four-count Complaint against Defendants James F. Geurts, Assistant Secretary of the Navy, The Honorable Lloyd J. Austin, III, Secretary of Defense, The Honorable Carlos Del Toro, Secretary of the Navy, and the United States of America seeking a declaratory judgment to resolve the alleged errors underlying his military court-martial convictions for (1) wrongfully providing alcohol to minors, (2) conspiracy to commit sexual assault, (3) wrongfully photographing the private area of another, and (4) adultery. *See* ECF No. 1. Pending before the Court is Defendants' Motion to Dismiss, ECF No. 8.[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Defendants' Motion to Dismiss is granted.

---

[1] Also pending before the Court is Plaintiff's unopposed Motion to Seal Official Court Martial Record of Trial, ECF No. 5, which the Court now grants. *See Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc.*, No. 19-cv1312-GJH, 2021 WL 1215769, at *5 n.3 (D. Md. Mar. 31, 2021). Additionally pending are Defendants' Consent Motion for Extension of Time to Respond to Plaintiff's Complaint, ECF No. 6, Plaintiff's Second Consent Motion for Extension of Time to Oppose Defendants' Motion to Dismiss, ECF No. 12, and Defendants' Motion for Extension of Time to File Reply, ECF No. 16, each of which the Court also grants.

I.      **BACKGROUND**[2]

   **A. Factual Background**

On the evening of August 30, 2014, Plaintiff and two friends, Lance Corporal Zeyquan

Gardner ("LCpl. Gardner") and Lance Corporal Abhisek Handoo ("LCpl. Handoo"), were at

LCpl Gardner's home on the Marine Corps Base in Hawaii. ECF No. 1 ¶¶ 9. They planned to go

to a club called "The Door" in Chinatown, where LCpl Handoo planned to meet with some

friends. *Id.* ¶ 10.

Plaintiff and LCpls Gardner and Handoo left the base around 9pm, with Plaintiff driving

the car, when, on the way, LCpl Gardner asked Plaintiff to stop the car because he noticed two

young women on the side of the road who seemed lost. *Id.* ¶¶ 11–13. After Plaintiff pulled over

the car, LCpl Gardner began speaking with the young women and he learned that they wanted to

go to a nightclub called "Vice" in the downtown area, but they could not find the bus stop. *Id.* ¶¶

14–15. LCpl Gardner offered the young women a ride because they were all going in the same

direction, and they accepted. *Id.* ¶¶ 16–17. In the car, on the way downtown, all five people

introduced themselves to each other—with the women identifying themselves as RB and SE, two

students at Hawaii Pacific University—before the marines dropped them off at Vice Nightclub.

*Id.* ¶¶ 18–20. LCpl Gardner exchanged phone numbers with SE and told her that if they needed a

ride back, she could contact him. *Id.* ¶ 22. After dropping the two women at the nightclub,

Plaintiff and LCpls Gardner and Handoo went to Chinatown, LCpl Handoo met up with his

friends, and Plaintiff and LCpl Gardner watched a show at the club until, after about 45 minutes,

LCpl Gardner received a text message from SE asking to meet and whether he could get alcohol

---

[2] Unless otherwise stated, the background facts are taken from Plaintiff's Complaint, ECF No. 1, and are presumed to be true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

for her and RB. *Id.* ¶¶ 20–26. LCpl Gardner agreed to meet them, he told Plaintiff, and they left the bar together while LCpl Handoo stayed at the bar with his friends, though they told LCpl Handoo they would come back. *Id.* ¶¶ 29–33.

Plaintiff and LCpl Gardner drove to Vice Nightclub to pick up the two women and met up with them at the parking lot, though they did not stop to get any additional alcohol because "it was late in the night" and the stores in Hawaii had stopped selling it. *Id.* ¶¶ 37–38, 34. LCpl Gardner and Plaintiff "only had an opened bottle of Cîroc vodka in the car," which was approximately a quarter full, and after the two women got in the car, LCpl Gardner poured himself vodka into a solo cup and "he handed the bottle and other cups to RB and SE." *Id.* ¶ 39. RB poured vodka for herself and SE, they started drinking, and because they "also wanted to party," they went to an 18 and older strip club. *Id.* ¶¶ 40–42. While walking to the strip club, LCpl Gardner and SE were talking and flirting while Plaintiff and RB "also became interested in each other," with RB placing her arm around Plaintiff, who reciprocated. *Id.* ¶¶ 44–46. Plaintiff, LCpl Gardner, RB, and SE watched the show, but did not drink any additional alcohol because the club did not serve it, and they left the strip club after less than an hour. *Id.* ¶¶ 47–48.

On the way back to the car, LCpl Gardner and SE kissed, and after getting into the car, RB wanted to drink more alcohol, so they all decided to go to LCpl Gardner's house on the base to retrieve the alcohol he had there. *Id.* ¶¶ 50–53. In the car, SE and LCpl Gardner were kissing in the back seat, and after arriving at the base, LCpl Gardner took a bottle of Crown Royal, while RB and Plaintiff kissed outside the bathroom in LCpl Gardner's house. *Id.* ¶¶ 57–60. When the group left the base, they switched to LCpl Gardner's car, which he drove, and shortly thereafter, LCpl Handoo contacted Plaintiff and LCpl Gardner to come pick him up. *Id.* ¶¶ 61–63. On the way to pick up LCpl Handoo, Plaintiff and RB kissed in the back seat, and when LCpl Handoo

3

entered the car, he noticed the bottle of alcohol and poured himself, RB, and SE cups as well, which was the two women's last drink of the evening. *Id.* ¶¶ 64–67. Having no plan once the group reunited with LCpl Handoo, LCpl Gardner tried to get water for SE because "he noticed she was getting drunk," in part, because she became emotional and started crying. *Id.* ¶¶ 68–70. LCpl Gardner drove to three hotels in search of water, but the stores in each were closed, therefore he drove to another hotel, but decided to stop and get a hotel room for the group. *Id.* ¶¶ 71–75. After LCpl Gardner checked into the room, they all began to walk to the room, however, SE was having trouble walking, vomited in the parking lot, and LCpl Gardner carried her into the room. *Id.* ¶¶ 76–81.

Once in the room, LCpl Gardner and SE went to the bed farthest from the door, LCpl Handoo took the couch, and Plaintiff and RB went to the bed closest to the door. *Id.* ¶¶ 81–84. Plaintiff and RB "began engaging sexually," as did LCpl Gardner and SE, however, SE told him that "she could not do it due to her religion" and started crying, which caused Plaintiff and RB to pause so that RB could try to calm SE down. *Id.* ¶¶ 85–95. RB "recommended having sexual intercourse" with Plaintiff and, later that same evening, "RB also had sexual intercourse with LCpl Gardner." *Id.* ¶¶ 96–99. When RB was asleep, LCpl Gardner stated that Plaintiff tried to take a photo of her, but then deleted it, but "Plaintiff has no recollection of ever taking a photo or deleting a photo of RB sleeping." *Id.* ¶¶ 100–101. The following morning, Plaintiff, LCpl Gardner, RB, and SE checked out of the hotel room and left together, Plaintiff and LCpl Gardner drove them back to their doom room, and they all hugged one another and said goodbye. *Id.* ¶¶ 102–103.

**B. Procedural Background**

At the general court-martial, Plaintiff was charged with the following: (1) one violation of Article 92 of the Uniform Code of Military Justice ("UCMJ") for violating a lawful order by wrongfully providing alcohol to RB and SE; (2) one violation of Article 120 of the UCMJ for rape and sexual assault of RB; (3) two violations of Article 81 of the UCMJ for conspiracy to commit sexual assault against RB and conspiracy to commit sexual assault against SE, (4) one violation of Article 120c of the UCMJ for wrongfully photographing RB's private areas; and (5) two violations of Article 134 of the UCMJ for fraternization with LCpl Gardner and for adultery. ECF No. 1 ¶ 106. The general court-martial ultimately convicted Plaintiff of violating a lawful order, conspiring to commit sexual assault, wrongfully photographing the private areas of another person, adultery, and fraternization. *Id.* ¶ 108. Plaintiff was sentenced to three years confinement, a reduction to pay grade E-1, and a bad conduct discharge, and he was made to register as a sex offender. ECF No. 1 at 2.[3]

Plaintiff appealed his conviction to the United States Navy-Marine Corps Court of Criminal Appeals ("NMCCA") and raised the following four Assignments of Error ("AOEs"): (1) legal and factual sufficiency questions for his conspiracy, indecent recording, and fraternization convictions; (2) the appropriateness of his sentence compared to his co-accused's sentence; (3) the failure to award confinement credit; and (4) the unconstitutionality of adultery under the UCMJ. ECF No. 1-3 at 2 (copy of unpublished NMCCA opinion resolving Plaintiff's appeal). On March 17, 2017, in an unpublished opinion, the NMCCA overturned Plaintiff's conviction for fraternization with LCpl Gardner and upheld all of the other convictions. ECF No. 1 ¶¶ 109–110. Plaintiff received no change to his sentence. *Id.* ¶ 111. As supplemented by

---

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Defendants, on May 17, 2017, Plaintiff petitioned the Court of Appeals for the Armed Forces ("CAAF") for a Grant of Review, *see* ECF No. 8-1 at 5 (copy of docket reflecting Plaintiff's appeal to the CAAF), which the CAAF denied on July 7, 2017, *see* ECF No. 8-2 at 11 (copy of docket reflecting CAAF's denial of Plaintiff's Grant of Review).[4]

On November 5, 2021, Plaintiff filed a Complaint for Declaratory Judgment, ECF No. 1. On March 25, 2022, Defendants filed the now pending Motion to Dismiss, ECF No. 8, which Plaintiff opposed on June 17, 2022, ECF No. 14. Defendants replied on August 1, 2022.

## II.     STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks

---

[4] "With that said, in consideration of a motion to dismiss, a court may take judicial notice of matters of public record such as court filings or records, without so converting the motion." *Anderson v. Bolster*, No. 1:19CV75, 2020 WL 5097516, at *4 (E.D. Va. Aug. 27, 2020) (citing *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395 (4th Cir. 2006)).

omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint[,]" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

"Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider exhibits, without converting the motion to dismiss to one for summary judgment." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 501 (D. Md. 2019) (citing *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015)). "In particular, a court may consider documents that are 'explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . .'" *Id.* (ellipsis in original) (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)). The Court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166. "To be integral, a document must be one that by its very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Brennan*, 361 F. Supp. 3d at 502 (emphasis and internal quotation marks omitted) (quoting *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)).

## III.   DISCUSSION

Defendants argue that each of Plaintiff's claims should be dismissed because "they received full and fair review in the military justice system and cannot be relitigated here." ECF No. 8 at 4.

It is well-established that "[c]ivil courts cannot review claims that have been 'fully and fairly' considered by the military justice system." *Chinchilla v. Whitley*, No. 3:20CV871-HEH, 2021 WL 1792075, at *3 (E.D. Va. May 5, 2021), *aff'd*, No. 21-1731, 2022 WL 3136940 (4th Cir. Aug. 5, 2022) (citing *Burns v. Wilson*, 346 U.S. 137, 142 (1953)). "Typically, collateral attacks of military-court convictions are raised in civil courts in the form of habeas petitions." *Id.* (citing *Burns*, 346 U.S. at 144 ("It is the limited function of the civil courts to determine whether the military have given fair consideration to . . . claims [raised in applications for habeas corpus].")). "The United States Court of Appeals for the Fourth Circuit has yet to enunciate the exact standard governing collateral attacks of court-martial convictions . . . [h]owever district courts in the Fourth Circuit have relied upon the Tenth Circuit's jurisprudence in this arena." *Id.* (citing *Anderson v. Bolster*, No. 1:19CV75, 2020 WL 5097516, at *4 (E.D. Va. Aug. 27, 2020) ("The Fourth Circuit has not implemented a definitive framework, but district courts within the circuit have near universally adopted the Tenth Circuit's [full and fair consideration] approach."); *Grafmuller v. Wegner*, No. 2:13CV50, 2013 WL 4808881, at *7 (E.D. Va. Aug. 9, 2013) ("District courts within the Fourth Circuit . . . have adopted the Tenth Circuit's approach to analyzing 'full and fair consideration.'") (internal citations omitted). "Jurisprudence on this subject has been developed primarily in the Tenth Circuit where the USDB at Fort Leavenworth Kansas is located." *Miller v. Air Force Clemency & Parole Bd.*, No. 10-cv-2621- JFM, 2011 WL 4402497, at *9 (D. Md. Sept. 20, 2011), *aff'd*, 472 F. App'x 210 (4th Cir. 2012).

The Tenth Circuit considers the following four factors in determining the validity of a collateral challenge to a court-martial:

> (1) the asserted error is of substantial constitutional dimension; (2) the issue is one of law rather than of disputed fact already determined by the military tribunal; (3) there are no military considerations that warrant different treatment of constitutional claims; and (4) the military courts failed to give adequate consideration to the issues involved or failed to apply proper legal standards.

*Lips v. Commandant, U.S. Disciplinary Barracks*, 997 F.2d 808, 811 (10th Cir. 1993).

"Emphasis is assigned to the fourth factor as the one most critical." *Miller*, 2011 WL 4402497, at *9 (citing *Lips*, 997 F.2d at 811 ("Under *Burns*, if the military gave full and fair consideration to claims asserted in a federal habeas corpus petition, the petition should be denied. Only when the military has not given a petitioner's claims full and fair consideration does . . . the scope of review by the federal civil court expand.")). In other words, "[civil] courts afford military court decisions 'significant deference,' and petitioners have an 'onerous' burden in proving that a claim did not receive full and fair consideration in the military courts." *Chinchilla*, 2021 WL 1792075, at *4 (citing *Anderson*, 2020 WL 5097516, at *5). "Therefore, in cases where the issues have been fully and fairly considered by the military courts, the Court does not consider the merits and should deny the petition." *Grafmuller*, 2013 WL 4808881, at *6 (E.D. Va. Aug. 9, 2013).

Further, "[w]here an issue is briefed and argued before the military court and is disposed of, even summarily, the federal habeas court will find that the issue has been given full and fair consideration." *Miller*, 2011 WL 4402497, at *9 (citing *Watson v. McCotter*, 782 F.2d 143, 145 (10th Cir.)), *cert. denied*, 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986)). And "[i]f a petitioner failed to present a claim to the military courts, it is waived." *Id.* (citing *Roberts v. Callahan*, 321 F.3d 994, 995 (10th Cir. 2003)).

9

Plaintiff argues that the Court "should not follow other courts within the Fourth Circuit," by adopting the Tenth Circuit's standard for collateral review because it is "insufficient to meet [the Supreme Court's] requirements that military convictions be properly reviewed to ensure that they have no fundamental defect." ECF No. 14 at 12, 11. Plaintiff argues, instead, that this Court should adopt the D.C. Circuit's two-pronged test, which involves "(1) a review of the military court's thoroughness in examining the relevant claims, at least where thoroughness is contested; and (2) a close look at the merits of the claim, albeit with some degree of deference and certainly more than under . . . [a] *de novo* standard." *Sanford v. United States*, 586 F.3d 28, 32 (D.C. Cir. 2009). Plaintiff contends that this test "actually examines a matter to ensure that there is no fundamental legal defect within the judgment[.]" ECF No. 14 at 12.

The Fourth Circuit has, however, on at least one occasion, affirmed a district court's application of the Tenth Circuit's full and fair consideration test to a collateral attack of a court-martial in a non-habeas case. *See Yongo v. United States*, No. 5:10-CV-220-F, 2013 WL 2285341, at *6 (E.D.N.C. May 23, 2013), *aff'd sub nom. Yongo v. McHugh*, 540 F. App'x 237 (4th Cir. 2013) (dismissing civil complaint, in part, because, under the Tenth Circuit's analysis, "the issues [then] raised were fully and fairly considered" in previous military appeals); *see also Chinchilla*, 2021 WL 1792075, at *3. Therefore, the Court will follow the Fourth Circuit's guidance and its sister courts in applying the Tenth Circuit's analysis in the instant case.

It is clear to the Court that the military courts have, undoubtedly, afforded Plaintiff's claims full and fair consideration. In Count I of the Complaint, Plaintiff details his version of events on that night in August of 2014 and alleges that "[t]here is neither legal nor factual sufficiency in this case to determine that [Plaintiff] himself ever provided the two women with alcohol.'" ECF No. 1 ¶ 131. Plaintiff, however, did not raise this issue on appeal to the NMCCA,

10

despite having the opportunity to do so. *See* ECF No. 1-3 at 2 (NMCCA opinion indicating that Plaintiff asserted assignment of errors as to only conspiracy, indecent recording, and fraternization); *see also United States v. Williams*, No. 201500296, 2017 WL 1034020, at *1 (N-M. Ct. Crim. App. Mar. 17, 2017). Because Plaintiff "failed to present [this] claim to the military courts, it is waived." *See Miller*, 2011 WL 4402497, at *9.

The Court is unable to review Count II of the Complaint, in which Plaintiff alleges that not all elements of conspiracy were established, *see* ECF No. 1 ¶¶ 133–196, and Count III, in which he alleges that there was "no evidence" supporting the charge that he wrongfully photographed the private area of another person, *see id.* ¶¶ 197–203, for a different reason. Plaintiff raised legal and factual sufficiency claims before both the NMCCA and the CAAF— specifically, in his first AOE in which he argued, in relevant part, that (1) the government "failed to present evidence" that he and LCpl Gardner entered into an agreement to sexually assault one of the women and (2) there was "no evidence that an indecent picture was ever taken." *See* ECF No. 1-3 at 7, 10–11; *see also Williams*, 2017 WL 1034020, at *4–6. Here, Plaintiff seeks to advance arguments identical to those raised in the AOE, with respect to both the conspiracy to commit sexual assault and indecent recording convictions, *see* ECF No. 1 ¶¶ 133–196, 197–203. The NMCCA devoted approximately three pages of its memorandum opinion, *see* ECF No. 1-3 at 6–11; *Williams*, 2017 WL 1034020 at *4–6, to these issues and found that "[a] reasonable factfinder could have found a mutual understanding legally sufficient to support the conspiracy conviction" and, as to indecent recording: "[w]e thus find the evidence both legally and factually sufficient to sustain this conviction." *Id.*

The NMCCA's "review alone constitutes full and fair consideration, but [Plaintiff] once again raised his sufficiency claims to the CAAF." *See Chinchilla*, 2021 WL 1792075, at *5; *see*

*also* ECF No. 8-1 at 3 (docket reflecting the filing of Plaintiff's Petition for Grant of Review). And, as stated before, that the CAAF, "even summarily," disposed of Plaintiff's claims "does not mean that [it] failed, as a matter of law, to afford [his] claims 'full and fair consideration.'" *See Anderson*, 2020 WL 5097516, at *5 (citing *Watson*, 782 F.2d at 145); *see also* ECF No. 8-2 at 11 (docket reflecting the CAAFs denial of Plaintiff's Petition for Grant of Review). Accordingly, in a case where, as here, "the issues have been fully and fairly considered by the military courts, the Court does not consider the merits," *see Grafmuller*, 2013 WL 4808881, at *6, no matter Plaintiff's arguments to the contrary, *see* ECF No. 14 at 13–17.

Finally, the Court is unable to review Plaintiff's claims in Count IV, regarding the alleged unconstitutionality of his adultery conviction, *see* ECF No. 1 ¶¶ 204–230, for the same reasons as Counts II–III. In the Complaint, Plaintiff argues that his conviction for adultery is "inherently prejudicial and should be set aside," because it "treats heterosexual servicemembers differently from homosexual servicemembers by defining the offense in heterosexual terms and authorizing heightened punishment." *Id.* ¶¶ 206–207. Plaintiff's fourth AOE on appeal to the NMCCA is identical to Count IV here: that "adultery under the UCMJ unconstitutionally imposes criminal liability and punishment for only heterosexual service members." *See* ECF No. 1-3 at 2; *Williams*, 2017 WL 1034020, at *1. This argument was summarily rejected by the NMCCA, *see Williams*, 2017 WL 1034020, at *1 n.3 ("We summarily reject the third, fourth, and supplemental AOEs . . . . We note the fourth AOE was resolved, contrary to [Plaintiff's] position, in *United States v. Hackler*, 75 M.J. 648, 656–57 (N–M. Ct. Crim. App. 2016)[.]"); *see also* ECF No. 1-3 at 2 n.3, and again by the CAAF in denying Plaintiff's Petition for Grant of Review, *see* ECF No. 8-2 at 11. Therefore, Plaintiff's claim in Count IV received full and fair consideration as well. *See Watson*, 782 F.2d at 145.

In sum, the military appellate courts fully and fairly considered Plaintiff's claims, and despite Plaintiff's artful characterization of his claims as having a constitutional dimension, *see* ECF No. 14 at 13–14, 17–18, the alleged errors, at bottom, seek to challenge the military courts' factual and evidentiary findings. "This Court is in no position and is unable to question the military courts' determination of these issues," therefore it will not so here. *See Chinchilla* v. *Whitley*, 2021 WL 1792075, at *6; *Anderson*, 2020 WL 5097516, at *6. Accordingly, Plaintiff's Complaint will be dismissed.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted. A separate Order shall issue.

Date: <u>August 18, 2022</u>                                    <u>   /s/                                    </u>
                                                                                GEORGE J. HAZEL
                                                                                United States District Judge